1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
9                                      AT TACOMA

10    SUSANNA CORONA,

11                          Plaintiff,                  CASE NO. 3:15-cv-05629 JRC

12           v.                                         ORDER ON PLAINTIFF'S
                                                        COMPLAINT
13    CAROLYN W. COLVIN, Acting
14    Commissioner of the Social Security
      Administration,
15
                            Defendant.
16

17           This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18    Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19    Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States

20    Magistrate Judge, Dkt. 6). This matter has been fully briefed (*see* Dkt. 11, 15, 18).

21           After considering and reviewing the record, the Court concludes the ALJ erred in

22    evaluating the medical evidence, but the error was harmless. However, the Court finds

23    that the ALJ did commit harmful error when she discounted plaintiff's testimony

24

ORDER ON PLAINTIFF'S COMPLAINT - 1

regarding her symptoms and limitations. Had the ALJ properly considered plaintiff's testimony, the residual functional capacity ("RFC") may have included additional limitations. The ALJ also erred when evaluating the lay witness testimony.

Because the ALJ committed harmful errors, this matter is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and remanded to the Acting Commissioner for further consideration consistent with this order.

BACKGROUND

Plaintiff, SUSANNA CORONA, was born in 1962 and was 49 years old on the amended alleged date of disability onset of December 6, 2011 (*see* AR. 22, 43, 208-14, 215-23). Plaintiff graduated from high school (AR. 55). Plaintiff has work experience as a cashier/checker, stocker and housekeeping (AR. 264-76). Plaintiff last worked in a grocery store until her psychiatrist told her to take a month off and then two months off because of her depression and anxiety (AR. 45-47).

According to the ALJ, plaintiff has at least the severe impairments of "depression, anxiety and fibromyalgia (20 CFR 404.1520(c) and 416.920(c))" (AR. 24).

At the time of the hearing, plaintiff was living in an apartment with her daughter and two grandchildren (AR. 54).

PROCEDURAL HISTORY

Plaintiff's applications for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 150-53, 154-57, 160-62, 163-64). Plaintiff's

requested hearing was held before Administrative Law Judge Jo Hoenninger ("the ALJ") on December 18, 2013 (*see* AR. 37-89). On January 17, 2014, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 19-36).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ properly evaluated the medical evidence; (2) Whether or not the ALJ properly evaluated plaintiff's testimony; (3) Whether or not the ALJ properly evaluated the lay evidence; (4) Whether or not the ALJ properly assessed plaintiff's residual functional capacity; (5) Whether or not the ALJ erred by basing her step five finding on a residual functional capacity assessment that did not include all of plaintiff's limitations and that was inconsistent with the DOT; and (6) Whether or not the new evidence submitted to the Appeals Council shows that the ALJ's decision was not supported by substantial evidence and/or that it was based on legal error (*see* Dkt. 11, p. 2).

<u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

1

<u>DISCUSSION</u>

2

**(1)      Whether or not the ALJ properly evaluated the medical evidence.**

3

Plaintiff argues the ALJ erred in her treatment of the medical evidence of Peter

4

Carey, Ph.D., Steven Goldsmith, M.D., and Danielle Buchanan, CSWA, QMHP (Dkt. 11,

5

pp. 3-7). Plaintiff also includes a "catch all" argument that the ALJ erred in her treatment

6

of all of her other treating and examining physicians (*see id.*).

7

The ALJ must provide "clear and convincing" reasons for rejecting the

8

uncontradicted opinion of either a treating or examining physician or psychologist.

9

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Embrey v. Bowen*, 849 F.2d

10

418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). But when

11

a treating or examining physician's opinion is contradicted, that opinion can be rejected

12

"for specific and legitimate reasons that are supported by substantial evidence in the

13

record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th

14

Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can

15

accomplish this by "setting out a detailed and thorough summary of the facts and

16

conflicting clinical evidence, stating his interpretation thereof, and making findings."

17

*Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881

18

F.2d 747, 751 (9th Cir. 1989)). The ALJ may not reject a brief, conclusory opinion from

19

a treating physician if the opinion is consistent with the claimant's testimony and with the

20

doctor's treatment notes. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014).

21

22

In addition, the ALJ must explain why her own interpretations, rather than those of

23

the doctors, are correct. *Reddick*, 157 F.3d at 725 (citing *Embrey*, 849 F.2d at 421-22).

24

But, the Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*, 49 F.3d at 571.  For example, "an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them." *Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) (citing *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014)).

*(a) Yamhill County Mental Health*

Plaintiff argues that the ALJ erred in failing to discuss significant probative evidence of two medical providers at Yamhill County Mental Health: Steven Goldsmith, M.D., and Danielle Buchanan, CSWA, QMHP (Dkt. 11, p. 6). Defendant argues that the ALJ need not have discussed the opinions of Dr. Goldsmith and Ms. Buchannan because neither provider opined that plaintiff has functional limitations (Dkt. 15, pp. 6-7). For the reasons set forth below, the Court agrees in part.

i.      Dr. Goldsmith

Plaintiff visited Yamhill County Mental Health from approximately August 2012 through November 2012 (AR. 399-31). On October 15, 2012, Dr. Goldsmith conducted a psychiatric assessment on plaintiff (AR. 417-19). Dr. Goldsmith charted plaintiff's history, including that she began having auditory hallucinations eight months before her visit (AR. 417). Dr. Goldsmith conducted a mental status examination, observing that plaintiff was "[a]lert and grossly oriented, agitatedly twisting hands; relatively open and

1  cooperative, normal speech, depressed with weeping; logical and goal-directed

2  associations, … [and] future oriented" (AR. 418). Dr. Goldsmith diagnosed plaintiff with

3  bipolar disorder, and observed that "[t]he severity of her recent depression is of psychotic

4  or near-psychotic proportions" (AR. 418). Dr. Goldsmith did not opine that plaintiff has

5  any functional limitations.

6      The ALJ noted that plaintiff saw Dr. Goldsmith in October 2012 and he diagnosed

7  her with bipolar disorder as well as alcohol abuse in remission (AR. 27). With respect to

8  Dr. Goldsmith's opinion, the ALJ stated in full:

9
10      Although Dr. Goldsmith diagnosed bipolar disorder, subsequent records
        reflect only a diagnosis of depression. Diagnoses of depression and anxiety
11      occur more consistently throughout the record. Regardless of the precise
        diagnoses, her mood disorder symptoms have been fully considered in
12      assessing the claimant's residual functional capacity.

13  (AR. 28).

14      Contrary to plaintiff's assertion, the ALJ did discuss Dr. Goldsmith's clinical

15  findings, including his diagnosis of bipolar disorder (*see* AR. 27-28). But, as an initial

16  matter, the Court cannot determine what weight the ALJ gave to Dr. Goldsmith's

17  opinion, if any. Moreover, it appears the ALJ dismissed Dr. Goldsmith's diagnosis of

18  bipolar disorder because "subsequent records reflect only a diagnosis of depression" and

19  the record throughout reflects only diagnoses of depression (*see* AR. 28). While there

20  may be differences in diagnoses, the ALJ fails to explain why another doctor's

21  observations and diagnoses are more credible than Dr. Goldsmith's observations (*see* AR.

22  28). Without any explanation whatsoever, the Court cannot determine if the ALJ's

23  reasoning is specific and legitimate and supported by substantial evidence. *See Garrison*

24

*v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (an ALJ errs when he rejects a medical

opinion or assigns it little weight when asserting without explanation another medical

opinion is more persuasive). Thus, the ALJ erred in her treatment of Dr. Goldsmith's

opinion.

Nevertheless, the Ninth Circuit has "recognized that harmless error principles

apply in the Social Security Act context." *Molina v. Astrue,* 674 F.3d 1104, 1115 (9th

Cir. 2012) (citing *Stout v. Comm'r, Social Security Admin.*, 454 F.3d 1050, 1054 (9th

Cir.2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in

*Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the

ultimate nondisability determination.'" *Marsh*, 792 F.3d at 1173 (citing *Stout*, 454 F.3d at

1055-56). In spite of the ALJ's errors in discussing Dr. Goldsmith's opinion, the Court

finds the error was harmless.

Here, Dr. Goldsmith did not identify any functional limitations that would be

relevant to a disability determination. An ALJ need not discuss evidence that is neither

significant nor probative. *See Howard ex rel. Wolff v. Barnhart,* 341 F.3d 1006, 1012 (9th

Cir.2003); *Vincent*, 739 F.2d at 1395. A doctor's opinion devoid of any opined

limitations is not significant or probative. *See*, *e.g.*, *Hughes v. Colvin*, No. C13-0143-

MAT, 2013 WL 11319016, at *3 (W.D. Wash. Aug. 14, 2013), *aff'd*, 599 F. App'x 765

(9th Cir. 2015) (citing *Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th

Cir. 2010) (explaining that where a doctor's opinion does not assign any specific

limitations, an ALJ need not provide reasons for rejecting the opinion because none of

the conclusions were actually rejected)); *see also Vincent*, 739 F.3d at 1394-95. Plaintiff

does not explain what limitations the ALJ failed to consider, nor does she explain how the RFC failed to take into account Dr. Goldsmith's treatment notes. *See*, *e.g.*, *Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) (the court rejected "any invitation to find that the ALJ failed to account for [the claimant's] injuries in some unspecified way" when the claimant failed to detail what limitations followed from the evidence beyond those already listed in the RFC). Indeed, the ALJ noted that she took into account Dr. Goldsmith's opinion in formulating the RFC (*see* AR. 28). Because none of the information contained in Dr. Goldsmith's evaluation identified limitations or opinion related to plaintiff's ability to work, the Court finds the ALJ's error in evaluating Dr. Goldsmith's opinion was harmless.

ii.   Danielle Buchanan, CSWA, QMHP

Plaintiff also attended therapy sessions with Danielle Buchanan, a licensed social worker and mental health professional, at Yamhill County Mental Health in October and November 2012 (*see* AR. 415-16, 423, 426-31). Ms. Buchanan charted notes related to plaintiff's therapy visits, including that plaintiff appeared "tearful" (AR. 416, 423, 427) and scared regarding her diagnosis of bipolar disorder (AR. 423). Ms. Buchanan did not opine that plaintiff has any limitations regarding her ability to work (*see* AR. 415-16, 423, 426-31).

In addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources" and "other sources" such as nurse practitioners, physician assistants, therapists and

chiropractors, who are considered other medical sources, *see* 20 C.F.R. § 404.1513 (d).

*See also Turner*, 613 F.3d at 1223-24 (citations omitted). An ALJ may disregard opinion

evidence provided by both types of "other sources," characterized by the Ninth Circuit as

lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so.'" *Turner*,

613 F.3d at 1224 (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also*

*Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because in

determining whether or not "a claimant is disabled, an ALJ must consider lay witness

testimony concerning a claimant's ability to work." *Stout*, 454 F.3d at 1053 (citing

*Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) and

(e), 416.913(d)(4) and (e)).

Although plaintiff is correct that the ALJ did not discuss Ms. Buchanan's therapy

notes, the Court finds the ALJ did not err when she failed to discuss Ms. Buchanan's

notes in her decision. While the ALJ must "make fairly detailed findings in support of

administrative decisions to permit courts to review those decisions intelligently," the ALJ

"need not discuss all evidence presented." *Vincent*, 739 F.2d at 1394-95. As noted above,

the ALJ need not discuss evidence that is neither significant nor probative. *See Howard*,

341 F.3d at 1012. As the Commissioner argues, Ms. Buchanan's treatment notes contain

no functional limitations related to plaintiff's ability to work, and an ALJ need only

consider lay witness testimony "concerning a claimant's ability to work." *Stout*, 454 F.3d

at 1053. Therefore, Ms. Buchanan's treatment notes were not significant, probative

evidence that the ALJ was required to discuss, and the ALJ did not err.

*(b) Peter Carey, Ph.D.*

Plaintiff also argues that the ALJ erred in her treatment of Peter Carey, Ph.D. because: (1) the ALJ failed to fully develop the record regarding Dr. Carey's treatment records, and (2) in light of new treatment records submitted to the Appeals Council, after the ALJ issued her opinion, the ALJ's treatment of Dr. Carey's medical opinion is not supported by substantial evidence (Dkt. 11, pp. 3-4, 18-19).

Dr. Carey treated plaintiff from December 2011 through February 2012 (*see* AR. 479-88). At the time the ALJ issued her decision, the record related to Dr. Carey consisted of (1) a December 6, 2011 letter from Dr. Carey, requesting that plaintiff's employer excuse her absence and noting that he recommends plaintiff apply for leave under the Family Medical Leave Act (*see* AR. 479); and (2) an employer form Dr. Carey completed for plaintiff (*see* AR. 480). On the form, Dr. Carey opined that plaintiff was suffering from the following functional limitations: "poor concentration, panic attacks, [and] not enough energy to stand on [her] feet for more than 60 min[utes]" (*id.*). Dr. Carey also opined that plaintiff would need a leave of absence from one to three months and that she may need a shortened day for one to two months upon her return, which he estimated would be in March 2012 (AR. 480).

Based on these records, the ALJ stated:

> The medical evidence of record reflects the claimant was given a recommendation for a brief leave of absence from work beginning December 6, 2011 but there is no evidence of ongoing restrictions from work. Peter F. Carey, Ph.D., wrote a letter requesting the claimant be excused from work on December 6, 2011 as she was attending a doctor appointment and was experiencing anxiety symptoms with panic attacks and depression. On January 5, 2012, he reported she would need a leave of

1
2
3

absence of 1 to 3 months. It was expected she would be released to work in March 2012. There is no evidence of any further evaluations, work excuses, or work restrictions from Dr. Carey. The opinion of Dr. Carey is given some weight. However, there is no evidence he extended any work restrictions beyond March 2012.

4

(AR. 27).

5
6
7

After the ALJ issued her decision, counsel for plaintiff submitted additional treatment records from Dr. Carey to the Appeals Council, noting that the records "pertain

8
9
10

to the period under adjudication but were not received until after the ALJ's decision was in the decision writing process" (AR. 16-17). The Appeals Council made the additional evidence part of the record (AR. 14, 482-88). The new records contain Dr. Carey's intake

11
12

assessment as well as treatment records from December 6, 2011 through February 13, 2012 (*see* AR. 482-88). Although Dr. Carey opined plaintiff suffers from depression and

13
14

anxiety (*see* AR. 487), the new records do not contain any opined functional limitations related to plaintiff's ability to engage in substantial gainful activity (*see* AR. 482-88).

15
16
17
18

Plaintiff argues that these records demonstrate that (1) the ALJ failed in her duty to develop the record, and (2) the ALJ's treatment of Dr. Carey's opinion is no longer supported by substantial evidence (*see* Dkt. 11, pp. 3-4, 18-19). For the reasons discussed below, the Court agrees in part, but finds any error was harmless.

19

i.      Duty to Develop the Record

20
21
22
23

Plaintiff argues the ALJ "violated the ALJ's duty to fully and fairly develop the record" regarding Dr. Carey's medical opinion because the ALJ did not obtain and review additional treatment records from Dr. Carey, which plaintiff submitted to the

24

Appeals Council after the ALJ issued her decision (*see* Dkt. 11, pp. 3-4; AR. 14, 16-17, 481-88).

The ALJ "has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 411, 443 (9th Cir. 1983))). The ALJ's "duty exists even when the claimant is represented by counsel." *Brown*, 713 F.2d at 443 (citing *Driggins v. Harris*, 657 F.2d 187, 188 (8th Cir. 1981)).

Plaintiff was represented by counsel at the hearing before the ALJ (*see* AR. 39). At the hearing, counsel for plaintiff confirmed that she had had a chance to review the records and that she had no objections (*see* AR. 39-41). At the hearing, the ALJ admitted into evidence Dr. Carey's December 2011 letter and the employer form completed by Dr. Carey (*see* AR. 41-42), and council did not indicate that additional records were forthcoming. Nevertheless, the Court agrees that the ambiguous evidence before the ALJ, including the lack of treatment records supporting Dr. Carey's opined limitations on the employer form as well as a letter asking the employer to excuse plaintiff from work, triggered the ALJ's duty to more fully develop the record and obtain additional evidence from Dr. Carey. Indeed, the ambiguity in the record is evident in the ALJ's discussion of Dr. Carey's medical opinion, wherein the ALJ states "[t]here is no evidence of any further evaluations, work excuses, or work restrictions from Dr. Carey" (AR. 27). Clearly, Dr. Carey's opinion that plaintiff was precluded from working is significant, probative evidence the ALJ should have explored. In the absence of additional evidence

or explanation, the ALJ should have obtained or attempted to obtain additional documents from Dr. Carey to explore his opinion as to plaintiff's limitations. Thus, the ALJ erred in failing to fully develop the record.

Nevertheless, as noted above, "harmless error principles apply in the Social Security Act context." *Molina*, 674 F.3d at 1115 (citations omitted). The Court finds the ALJ's error to fully develop the record was harmless. As noted above, an ALJ need only discuss probative evidence, *see Howard*, 341 F.3d at 1012, and treatment records with no opined limitations as to a plaintiff's ability to engage in substantial gainful activity are not significant or probative. *See Hughes*, 2013 WL 11319016, at *3 (citing *Turner*, 613 F.3d at 1223. Dr. Carey's additional records contain no new opined limitations not already considered by the ALJ. Moreover, plaintiff stopped seeing Dr. Carey in February 2012, one month before the end of the disability period Dr. Carey opined plaintiff would need to be off work (*see* AR. 480), which the ALJ did consider (*see* AR. 27). Thus, although the ALJ violated her duty to fully develop the record, the error was harmless as she considered and discussed all significant, probative evidence from Dr. Carey's records.

ii.      Dr. Carey's Medical Opinion In Light of New Evidence

Plaintiff also argues that, in light of the new evidence submitted to the Appeals Council, the ALJ's evaluation of Dr. Carey's opinion is no longer supported by substantial evidence (Dkt. 11, pp. 18-19). "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the

Commissioner's final decision for substantial evidence." *Brewes v. Comm'r, Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir.2012). Accordingly, the question before the Court is whether, in light of the new evidence plaintiff submitted to the Appeals Council, substantial evidence supports the ALJ's decision.

For the same reason the ALJ's error in failing to fully develop the record was harmless, the new evidence does not change the ALJ's evaluation of the record as a whole, and her treatment of Dr. Carey's opinion is still supported by substantial evidence. The new records contain no new opined limitations other than those already incorporated into the RFC and discussed by the ALJ (*see* AR. 27, 480-88). The ALJ gave Dr. Carey's opinion "some weight" and noted that there is no additional evidence of opined work restrictions beyond March 2012. Instead of contradicting her opinion, the new evidence submitted to the Appeals Council supports the ALJ's conclusion. Thus, considering the new evidence submitted to the Appeals Council, the ALJ's opinion as to Dr. Carey remains supported by substantial evidence.

### (c) Plaintiff's Additional Argument Challenging All Medical Evidence

In addition to challenging the ALJ's treatment of Dr. Goldsmith, Ms. Buchanan, and Dr. Carey, plaintiff also summarizes several other medical opinions (*see* Dkt. 11, pp. 3-7). With respect to these medical opinions, plaintiff does not assign specific error to the ALJ's treatment of the opinions but rather provides a general assignment of error at the end of her discussion of the medical evidence that "[t]he ALJ errs by failing to acknowledge that the medical findings from [plaintiff's] treating and examining physicians provide an objective evidentiary basis for [plaintiff's] testimony about her

symptoms and limitations" (Dkt. 11, p. 7). Plaintiff avers that "[t]his Court should hold that the ALJ's failure to properly evaluate all of the medical evidence is harmful error, as a reasonable ALJ who properly evaluated the medical evidence could have reached a different disability determination" (Dkt. 11, p. 7).

Plaintiff essentially asks this Court—without specific assignments of error—to reweigh all evidence in the record and arrive at a different conclusion. But, without any claims or argument, the Court "cannot manufacture arguments" for plaintiff, and can only review issues argued with specificity in plaintiff's opening brief. *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (citation and quotation omitted); *see also Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) ("We do not address this finding because Carmickle failed to argue this issue with any specificity in his briefing."); *see also Volkle v. Astrue*, No. C11-1881-MJP-JPD, 2012 WL 2576335, at *3 n.2 (W.D. Wash. June 14, 2012), *report and recommendation adopted*, No. C11-1881-MJP, 2012 WL 2573065 (W.D. Wash. July 2, 2012) (same). As a result, the Court will not reweigh all of the evidence in light of plaintiff's lack of specific argument as to each medical opinion. Nonetheless, to the extent plaintiff is arguing that the medical opinion evidence supports her testimony (*see* Dkt. 11, p. 7, *arguing* that the medical opinions "provide an objective evidentiary basis for [plaintiff's] testimony"), the court addresses the ALJ's evaluation of plaintiff's testimony in section 2, *infra*. As discussed below, the ALJ committed harmful error in her evaluation of plaintiff's testimony and statements regarding her limitations. Thus, upon remand, the ALJ shall reevaluate the medical opinion evidence anew.

1    **(2)    Whether or not the ALJ properly evaluated plaintiff's testimony.**

2    Plaintiff also argues the ALJ improperly evaluated her testimony regarding her

3    functional limitations (Dkt. 11, pp. 7-13). If an ALJ rejects the testimony of a claimant

4    once an underlying impairment has been established, the ALJ must support the rejection

5    "by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at

6    1284 (citing *Dodrill*, 12 F.3d at 918); *see also Burrell*, 775 F.3d at 1137 ("There is no

7    conflict in the caselaw, and we reject the government's argument that *Bunnell* excised the

8    "clear and convincing" requirement"); *Reddick*, 157 F.3d at 722 (citing *Bunnell v.*

9    *Sullivan*, 947 F.2d at 343, 346-47). As with all of the findings by the ALJ, the specific,

10   clear and convincing reasons also must be supported by substantial evidence in the record

11   as a whole. 42 U.S.C. § 405(g); *see also Bayliss*, 427 F.3d at 1214 n.1 (citing *Tidwell*,

12   161 F.3d at 601).

13

14   The ALJ's determinations regarding a claimant's statements about limitations

15   "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 722 (citing

16   *Bunnell*, 947 F.2d at 343, 346-47). In evaluating a claimant's allegations of limitations,

17   the ALJ cannot rely on general findings, but "'must specifically identify what testimony

18   is credible and what evidence undermines the claimant's complaints.'" *Greger v.*

19   *Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (quoting *Morgan v. Comm'r of Soc. Sec.*

20   *Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick*, 157 F.3d at 722 (citations omitted);

21   *Smolen*, 80 F.3d at 1284 (citation omitted). According to the Ninth Circuit, "we may not

22   take a general finding-an unspecified conflict between Claimant's testimony about daily

23   activities and her reports to doctors-and comb the administrative record to find specific

24

conflicts." *Burrell*, 775 F.3d at 1138; *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination, [which] was legal error").

The ALJ determined that plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms" but that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible" (AR. 27). The ALJ discounted plaintiff's testimony, noting that she "cancelled most of her subsequent appointments" and "[h]er minimal and sporadic treatment undermines her allegations of debilitating symptoms" (AR. 27). The ALJ also discounted plaintiff's complaints regarding her fibromyalgia, noting the "extent of her symptoms are not supported in the treatment record" and that "[s]he has sought very little treatment for her pain complaints" (AR. 28). Finally, the ALJ noted that plaintiff's activities of daily living undermine her credibility and that "[e]vidence suggests a more active lifestyle than alleged and she was not entirely forthcoming in her testimony" (AR. 28). Plaintiff argues that none of the reasons for discounting plaintiff's credibility are clear, cogent, and supported by substantial evidence. The Court agrees.

First, the ALJ discounted plaintiff's testimony because she failed to seek treatment for her mental impairments and cancelled several mental health appointments (*see* AR. 27-28). However, "the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [a physician's] assessment of claimant's condition is inaccurate."

*Van Nguyen*, 100 F.3d at 1465. "[I]t is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness." *Id.* (citation omitted).

Moreover, an ALJ cannot draw adverse credibility inferences based on failure to seek regular medical treatment without first considering the claimant's explanations. SSR 96–7p, 1996 WL 374186, at *3 (July 2, 1996); *see also Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989). Plaintiff testified that she did not receive treatment because she could not find a clinic, did not want to visit the emergency room for treatment, and did not want to have increased medical bills (*see* AR. 74). Indeed, treatment providers noted that plaintiff had difficulty seeking treatment for her mental health due to cultural barriers (*see* AR. 399) and another provider noted plaintiff had difficulty affording her medication (*see* AR. 441). The ALJ did not discuss plaintiff's or medical professionals' explanations for plaintiff's failure to seek treatment. Thus, discounting plaintiff's testimony regarding her symptoms and limitations because she did not seek treatment is not a clear and convincing reason supported by substantial evidence.

Second, the ALJ discounted plaintiff's testimony because of the lack of evidence and treatment for fibromyalgia. The ALJ offers no citation to the record, instead relying upon her disbelief of plaintiff's symptom testimony regarding her fibromyalgia, which the Ninth Circuit specifically prohibits. *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). Fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Id.* at 590. Thus, the ALJ erred by "'effectively requir[ing] 'objective' evidence for a disease that eludes such measurement.'" *Id.* (quoting *Green–Younger v.*

*Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (reversing and remanding for an award of benefits where the claimant was disabled by fibromyalgia)). Plaintiff's treating provider diagnosed her with fibromyalgia (*see*, *e.g.*, AR. 448), and plaintiff testified about her fibromyalgia symptoms (*see* AR. 58-59). Accordingly, as noted by the Ninth Circuit, "[s]heer disbelief is no substitute for substantial evidence." *Benecke*, 379 F.3d at 594. Further, as noted above, after a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony merely because the claimant's allegations of pain and symptoms are unsupported by objective evidence. *Bunnell*, 947 F.2d at 343. Thus, the ALJ's second reason for discounting plaintiff's testimony is neither supported by substantial evidence nor a clear and convincing reason for discounting plaintiff's testimony.

Third, the ALJ discounted plaintiff's testimony based on her activities of daily living. Regarding activities of daily living, the Ninth Circuit repeatedly has "asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn*, 495 F.3d at 639 (citing *Fair*, 885 F.2d at 603). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an

1   adverse determination regarding if a claimant's statements should be credited. *Orn*, 495

2   F.3d at 639 (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

3       Regarding plaintiff's activities of daily living, the ALJ stated:

> The claimant's allegations that she spends 80 percent of her time in her
> room and is debilitated by depression, anxiety and pain are not credible.
> Evidence suggests a more active lifestyle than alleged and she was not
> entirely forthcoming in her testimony. When asked what she does during
> the day, she initially stated she watches TV or just sits, but then
> acknowledged watching her grandson. When asked if she was babysitting
> her grandchildren, she responded "no" but then stated she keeps an eye on
> him after he gets off the bus. The Cooperative Disability Investigations
> Unit conducted an interview in December 2012. During the interview, the
> claimant tended to her grandson. She reported going to a casino 2 months
> prior.

11  (AR. 28-29).

12      Here, the ALJ offered no citations to the record to support her assertions that

13  plaintiff's activities of daily living undermine her credibility or are inconsistent with her

14  limitations. Plaintiff testified that she suffers from near-constant pain, that she is

15  depressed, and that she spends most of her day watching television and spends about 80%

16  of her time in her room (AR. 58,64-65, 73). Plaintiff also testified that she does not

17  babysit her grandchildren, but she does "keep an eye on them" when they get off the

18  school bus (AR. 64-65). As described, plaintiff's activities do not contradict her other

19  testimony or assertions. *See Fair,* 885 F.2d at 603. As noted above, "disability claimants

20  should not be penalized for attempting to lead normal lives in the face of their

21  limitations." *Reddick*, 157 F.3d at 722. The ALJ has only pointed to sporadic and

22  punctuated activities by the plaintiff—none of which contradict plaintiff's testimony

23  regarding her limitations—which should not penalize plaintiff for attempting to lead a

normal life in the face of her limitations. *Id.* Moreover, the ALJ failed to make specific findings relating to plaintiff's activities as applicable to workplace activities. Plainly, the ALJ's findings regarding plaintiff's daily activities were minimal and she failed to conduct the necessary transferability analysis. Thus, the Court agrees that none of the reasons offered by the ALJ for discounting plaintiff's testimony are clear and convincing, cogent, or supported by substantial evidence.

As discussed above, the Court concludes that the ALJ failed to provide clear convincing reasons for failing to credit fully plaintiff's allegations of her limitations. The Court also concludes that this error is not harmless. Here, had the ALJ credited fully plaintiff's allegations, the RFC determination would have been very different. For example, plaintiff alleged limitations related to her ability to sit, stand, and walk (*see* AR. 69-72), while the ALJ's RFC finding includes the "capacity to perform light work" (AR. 26; *see also* AR. 24 (citing 20 C.F.R. § 404.1567(b) ("a job is in this [light] category when it requires a good deal of walking or standing, or when it involves sitting most of the time ...."). Similarly, the ALJ improperly rejected limitations in plaintiff's testimony regarding her mental impairments in forming the RFC. Thus, the ALJ's rejection of plaintiff's testimony regarding her mental impairments was not harmless as the Court cannot conclude with confidence "that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *See Marsh*, 792 F.3d at 1173 (citing *Stout*, 454 F.3d at 1055-56).

**(3)     Whether or not the ALJ properly evaluated the lay evidence.**

Here, plaintiff also complains that the ALJ improperly discounted the testimony of lay witnesses, including her daughter, Denise Rodriguez, and her friend, Raedeane Shier (Dkt. 11, 13-16).

The Ninth Circuit has characterized lay witness testimony as "competent evidence," noting that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Smolen*, 80 F.3d at 1289). Similar to the rationale that an ALJ may not discredit a plaintiff's testimony as not supported by objective medical evidence once evidence demonstrating an impairment has been provided, *Bunnell*, 947 F.2d at 343, 346-47 (citation omitted), but may discredit a plaintiff's testimony when it contradicts evidence in the medical record, *see Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (citing *Allen v. Heckler*, 749 F.3d 577, 579 (9th Cir. 1984)), an ALJ may discredit lay testimony if it conflicts with medical evidence, even though it cannot be rejected as unsupported by the medical evidence. *See Lewis*, 236 F.3d at 511 (An ALJ may discount lay testimony that "conflicts with medical evidence") (citing *Vincent*, 739 F.2d at 1395; *Bayliss*, 427 F.3d 1214, 1218 ("Inconsistency with medical evidence" is a germane reason for discrediting lay testimony) (citing *Lewis*, 236 F.3d at 511); *see also Wobbe v. Colvin*, 2013 WL 4026820, at *8 n.4 (D. Or. Aug. 6, 2013), *aff'd*, 589 F. App'x 384 (9th Cir. 2015) (*Bruce* "stands for the proposition that an ALJ cannot discount lay testimony regarding a claimant's symptoms solely because it is *unsupported* by the medical evidence in the record; it does *not* hold *inconsistency* with the medical evidence is not a

germane reason to reject lay testimony") (citing *Bruce*, 557 F.3d at 1116) (emphasis in original)

As an initial matter, the ALJ rejected the opinions of Ms. Rodriguez and Ms. Shier, in part, because of the lack of objective evidence and treatment records (*see* AR. 28). The ALJ's reliance on medical records and lack of objective evidence is legal error: if these were legitimate reasons to discount lay testimony from a family member or friend, such evidence always would be discarded on such bases. Relevant federal regulations, social security rulings and Ninth Circuit case law make it clear that even lay evidence from friends and family members without any medical expertise is "competent evidence," which cannot be discredited "as not supported by medical evidence in the record." *Bruce v. Astrue,* 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Smolen*, 80 F.3d at 1289). Thus, lack of evidentiary support is not a germane reason for rejecting lay witness opinions.

In addition, the ALJ appears to determine that neither lay opinion is "credible" because the opinions are based on plaintiff's statements and allegations of her limitations (*see* AR. 28). As the Court has already instructed the ALJ to re-evaluate plaintiff's testimony and statements following remand, the ALJ shall also re-evaluate the lay witness evidence.

(4)   **Whether or not the ALJ properly assessed plaintiff's RFC and erred by basing her step five finding on a residual functional capacity assessment that did not include all of plaintiff's limitations and that was inconsistent with the DOT.**

As discussed in section 2, *supra*, had the ALJ properly weighed plaintiff's testimony, the RFC and hypothetical questions posed to the vocational expert may have included additional limitations. On remand, the ALJ shall re-evaluate the RFC and Step Five findings, if necessary.

<u>CONCLUSION</u>

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for and the case should be closed.

Dated this 20th day of July, 2016.

J. Richard Creatura
United States Magistrate Judge